```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


UNITED STATES OF AMERICA     *
                             *  Case No. 1:13CR279-1
vs.                          *
                             *  Winston-Salem, North Carolina
ANA LAURA CALLEJAS TIRADO,   *  February 19, 2014
                             *  4:55 p.m.
            Defendant.       *
*****************************


              TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE JAMES A. BEATY, JR.,
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:     GRAHAM T. GREEN, ESQUIRE
                        Office of United States Attorney
                        101 S. Edgeworth Street, 4th Floor
                        Greensboro, North Carolina 27401


For the Defendant:      MIREILLE P. CLOUGH, ESQUIRE
                        Office of Federal Public Defender
                        301 North Elm Street, Suite 410
                        Greensboro, North Carolina 27401



Interpreter:            Dr. Ernest Lunsford


Court Reporter:         Lori Russell, RMR, CRR
                        P.O. Box 20593
                        Winston-Salem, North Carolina 27120




           Proceedings recorded by stenotype reporter.
         Transcript produced by Computer-Aided Transcription.
```

1           P R O C E E D I N G S
2         (Defendant present.)
3              THE COURT:  What is the Government calling?
4              MR. GREEN:  Your Honor, the next matter is United
5    States of America versus Ana Laura Callejas Tirado.  It's
6    1:13CR219-1 (sic).  She's here for sentencing and
7    Dr. Lunsford is here to interpret.
8              THE COURT:  If you will have Dr. Lunsford sworn,
9    please.
10        (The interpreter was duly sworn.)
11             THE COURT:  Ms. Clough, you represent the
12   defendant, Ana Laura Callejas Tirado?
13             MS. CLOUGH:  I do, Your Honor.
14             THE COURT:  I believe she's subject to sentencing
15   for Count One, passport fraud; is that correct?
16             MS. CLOUGH:  Yes, Your Honor.
17             THE COURT:  Have you had an opportunity to review
18   the presentence report with your client?
19             MS. CLOUGH:  I have.
20             THE COURT:  Did you have sufficient time to do
21   that to determine whether or not any objections should be
22   filed?
23             MS. CLOUGH:  Yes, Your Honor.
24             THE COURT:  Are there any objections?
25             MS. CLOUGH:  There are none.

```
 1              THE COURT:  Taking the guidelines into account on
 2   an advisory basis, it appears the following ranges apply:
 3   total offense level of 10, criminal history category of I,
 4   imprisonment range of 6 to 12 months, supervised release
 5   range of 1 to 3 years, fine range of 2,000 to $20,000.  Is
 6   that your understanding?
 7              MS. CLOUGH:  It is, Your Honor.
 8              THE COURT:  In addition to considering the
 9   guidelines on an advisory basis, I'll hear from you as to
10   any other factors you would like to present on behalf of
11   your client.
12              MS. CLOUGH:  Yes, Your Honor.  Thank you.
13        Your Honor, I submitted a letter to the Court from
14   Pastor Juan Castillo from the Iglesia de Dios, the Church of
15   God, and Lily of the Valley in Siler City.  And I will tell
16   the Court that his wife is seated in the back in a green
17   jacket here to accompany Ms. Callejas Tirado.
18        Your Honor, in fashioning a sentence today that is
19   sufficient, but not greater than necessary, we would be
20   asking the Court to consider a probationary sentence.  That
21   is a very -- that is a variance from the 6- to 12-month
22   advisory guideline range, but in asking the Court to do so,
23   we would point out to the Court the following history and
24   characteristics.
25         Ms. Tirado is a hardworking woman of very humble means
```

and of very humble character.  The Court knows that in her work she worked at the same place for approximately 12 years.  That was from 2001 to 2013.  And she began there as a sewing lead person and then was given additional responsibilities and finished there on the day of her arrest.

In her life, it is reflected in the presentence report and in her conduct that she is a good mother, a good wife by her own husband's accounts.  She's raised two children who are U.S. citizens.

And this letter from her pastor speaks volumes of whom she is.  Paragraph 2 of that letter talks about the fact that she arrived at their church in March of 1998 and he uses words to describe Ana Laura as a blessing to the congregation, someone who is committed to the church, who through her service and leadership has shown to not just the pastor but the entire congregation her devotion and willingness to serve.  And he talks about her status as a leader in the weekly congregations of women's meetings. It's a letter that speaks volumes of who this woman is outside of the conduct that we're here for.

Certainly, Your Honor, it's very serious conduct.  It spanned a very long time.  But in mitigation, I would offer to the Court that when approached by the agents and when Agent Phelps went to speak to her at her employment,

 1  Ms. Callejas Tirado immediately admitted to her involvement,
 2  waived her rights, and spoke candidly with the agent about
 3  her involvement and about her knowledge about those papers
 4  and how she, in fact, had obtained those papers.  And not
 5  only did she speak to that agent on February 25th, but she
 6  also spoke again to that agent on June 12th and was always
 7  cooperative, respectful, and -- and honest with the officer.
 8       And, in fact, she has described to me that these
 9  events, although they have brought a lot of shame to her and
10  have embarrassed her family and caused her a lot of stress,
11  have also given her a lot of relief from the lie that she
12  was living that is inconsistent with what is -- what Pastor
13  Castillo talks about in his letter.
14       Your Honor, she was arrested and released to pretrial
15  supervision; and on that pretrial supervision, she has done
16  very well, has been compliant, has had no violations.
17       And for those reasons, Your Honor, we would ask the
18  Court to consider a probationary sentence for Ms. Tirado.
19  She has never been in custody, has no prior criminal
20  convictions, some minor traffic infractions.  Other than
21  that she has had no contact with the criminal justice system
22  and so we would respectfully be asking the Court to consider
23  that.
24       Looming over her head as well, Your Honor, is the fact
25  that she at some point will have to voluntarily interact

 1  with Immigration, and she is ready and prepared to do that.
 2  She and her family are making arrangements to prepare for
 3  that.
 4      I would simply ask the Court to consider probation.
 5  That would allow her and give her time to make arrangements
 6  for when she has to eventually talk to Immigration and more
 7  than likely go into Immigration custody.
 8          THE COURT:  That's the thing that concerns me,
 9  though, Ms. Clough, in terms of asking for probation.  She's
10  subject to deportation.
11      I'll inquire of probation.  I'm not sure that's
12  normally the situation, somebody is on probation and then
13  they're subject to deportation.
14          PROBATION OFFICER:  We have had a couple of cases,
15  Your Honor.  It's not normal.  Officer Schroeder spoke with
16  Immigration.  They have not filed a detainer.  They weren't
17  actively seeking to file one at this time.  That's all I
18  know about that, Your Honor.
19          MS. CLOUGH:  Your Honor, I certainly understand
20  the Court's concern about that, but I will tell the Court
21  that, though it's not the norm, it is something that can --
22  this Court can order.  Immigration is a civil proceeding.
23  At the moment they reach out to her, she is obligated to
24  interact with them.
25      She does have significant ties to the community.  That

is detailed in the presentence report.  She and her husband own a home in the community.  They have responsibilities.  Her husband is gainfully employed and he too is aware of potential immigration consequences.  They've availed themselves of this court --

THE COURT:  Are you suggesting he may be subject to deportation as well?

MS. CLOUGH:  Not that I'm aware of at this time, Your Honor, no.

But they do have two children.  And although her future is uncertain at the present, her primary motivation is those two children.  They want to keep them in school and keep them in this community.

So I would tell the Court that her ties are significant and that probation would allow for her -- would take into consideration those 3553(a) factors and the Court can order that during her probationary period she respond to Immigration and voluntarily interact with any correspondence with Immigration.

THE COURT:  Anything further?

MS. CLOUGH:  No, Your Honor.  Thank you.

THE COURT:  What says the Government?

MR. GREEN:  Your Honor, I guess the -- the concern the Government has principally -- if this was the sole event, maybe the case is a little bit in a different light.

1  In paragraph 8, it does appear that there -- in addition to
2  getting a false passport application, there was some
3  shenanigans, for lack of a better word, regarding her
4  divorce and remarriage of her present husband.  And
5  according to her, she did so so that they could help him
6  become a United States citizen.
7     The -- there are some charges that result to a -- I
8  guess what is her married name, although her true name is
9  Ms. Tirado.  It's really kind of hard to get a real sense of
10 what name we're going by and what name we're using.
11    And I notice in the offender characteristics she
12 declined to discuss the immigration citizenship of her
13 husband.  So that is certainly a consideration when -- I
14 don't know what ICE will do.  I did find it unusual, I will
15 say, that I have not before seen a defendant who would be
16 subject to ICE deportation be released on pretrial release.
17 It has obviously happened.
18    I'll leave this matter in the Court's sole discretion
19 in terms of what you think the appropriate things are about,
20 but those are the Government's concerns under the 3553(a)
21 factors of this case that are present in the PSR.
22              THE COURT:  Anything further, Ms. Clough?
23              MS. CLOUGH:  Your Honor, only to let -- to make
24 sure the Court knows that Immigration does know of today's
25 court.  They do know of her presence.  Ms. Schroeder did

```
 1  tell the immigration authorities of this court date.  So
 2  they're fully aware of the fact that we're here in court
 3  today.  They also are aware of the fact that she was
 4  arrested and her present charges.
 5       Certainly there is information in paragraph 8 that may
 6  or may not shed any light as far as her husband, but
 7  Ms. Tirado is here today in this court.  Those facts were as
 8  they were before she appeared to be arrested and they
 9  continue to be the same today.  But she's been to every
10  court date, has availed herself of pretrial supervision, and
11  would continue to do so if this Court were to order that.
12       Thank you, Your Honor.
13       (Pause in the proceedings.)
14            THE COURT:  Stand up, Ms. Tirado.
15       (The Defendant complied with the request.)
16            THE COURT:  In addition to what your attorney
17  said, is there anything you wish to say on your own behalf?
18            THE DEFENDANT:  Yes, Your Honor.  First, I would
19  like to apologize to the United States.  I know that what I
20  did was wrong and that there are no excuses for it.  I
21  repeat, there's no excuse, but what motivated me to do it
22  was I was looking for a better life for my family.  And once
23  again, I apologize and I'll try to be a better citizen.  All
24  these years that I've been here have been a blessing to me
25  and I once again apologize.  That's all.
```

2/19/14 - USA v. CALLEJAS TIRADO - SENTENCING HEARING

10

```
 1            (Pause in the proceedings.)
 2            THE COURT:  The Court has considered the
 3   calculations resulting from the advisory guidelines and find
 4   they were appropriately determined.  The Court has noted a
 5   total offense level of 10, a criminal history category of I,
 6   imprisonment range of 6 to 12 months.
 7        The Court has considered as well factors under 3553(a)
 8   as to the history and characteristics of the Defendant.  The
 9   Court notes the Defendant has had a good work history and
10   that she's been active in her church community.  She was
11   cooperative with law enforcement.
12        With respect to the nature and circumstances of the
13   offense, the Court would note that the incident as involved
14   in Count One is not a one-time incident, but has occurred on
15   a number of years and for an extended period of time.
16        Taking all these matters into account, including
17   Defendant's expression of remorse, the Court will impose a
18   sentence outside of the guideline range.
19        The Court will order a term of probation of two years.
20   As a condition of probation, the Defendant is subject to
21   home detention for a period of six months.  As a result of
22   the -- this order, the Defendant shall wear a location
23   monitoring device, which may include GPS or other monitoring
24   technology, and follow all approved procedures as specified
25   by the probation officer.  She is to pay for the location
```

2/19/14 - USA v. CALLEJAS TIRADO - SENTENCING HEARING

11

```
 1   monitoring services as directed by probation.
 2         To the extent the Defendant may be subject to
 3   deportation, the Court will order the Defendant, at such
 4   time as may be requested, surrender herself to a duly
 5   authorized immigration official.  If she's ordered deported,
 6   the Defendant shall remain outside of the United States
 7   during the term of supervision and shall not re-enter
 8   without permission of the United States Attorney General or
 9   the Secretary of the Department of Homeland Security.
10         The Court will further order the Defendant is placed on
11   probation for a period of two years.
12         She's ordered to pay a special assessment of $100.  In
13   addition, she's to pay a fine of $500.  The monetary
14   portions of this judgment are to be paid at a rate of $100
15   per month with the first payment coming due on March 7th,
16   2014, and to continue each month until fully paid.
17         The Defendant is to provide any requested financial
18   information to the probation officer and to notify the Court
19   or probation of any material change in her economic
20   circumstances that might affect her ability to pay the
21   monetary penalties.
22         The Defendant is to remain in contact with probation at
23   such time as may be requested and required, and not leave
24   the jurisdiction of the Court at any time without the prior
25   approval of probation.
```

```
 1         The Court orders that should the Defendant be contacted
 2   by Immigration for the purpose of deportation procedures,
 3   the Defendant shall immediately surrender herself as may be
 4   required.
 5         I'll inquire of probation whether there are any other
 6   matters the Court should include as a part of the
 7   probationary judgment.
 8              PROBATION OFFICER:  No, Your Honor.  I think that
 9   would be sufficient.
10              THE INTERPRETER:  Could you repeat that, please?
11              PROBATION OFFICER:  No, Your Honor.  I think that
12   would be sufficient.
13              THE COURT:  Does the Government wish to be heard?
14              MR. GREEN:  No, sir.
15              THE COURT:  She may speak with the probation
16   officer before she leaves, if necessary.
17              PROBATION OFFICER:  Yes, Your Honor, I will need
18   to see her.
19       I have one question for the Court regarding a sentence
20   outside or a variance.  I think, Your Honor, that sentence
21   would actually comply with the sentence without that being a
22   variance.  Or did you intend for that to be a variance?
23              THE COURT:  If the sentence complies -- I think
24   she is eligible for probation under Zone B.  To the extent
25   the Court has imposed it with that in mind, then if it is
```

```
 1   within the guidelines, then that is fine.
 2           PROBATION OFFICER:  All right.  Thank you, Your
 3   Honor.
 4           THE COURT:  Anything further?
 5      Ms. Clough, if you'll make sure your client sees the
 6   probation officer before she leaves, not at this time.  She
 7   just needs to remain until court is over.
 8           MS. CLOUGH:  Yes, sir.
 9           THE COURT:  She may have a seat back in the
10   audience.
11           MS. CLOUGH:  Thank you, Your Honor.
12           THE COURT:  I will inquire whether or not you've
13   had a chance to speak with her concerning any rights of
14   appeal she may have with respect to the judgment the Court
15   has imposed in this case.
16           MS. CLOUGH:  I have, Your Honor.
17           THE COURT:  Please remind her if she should choose
18   to file notice of appeal it must be done in writing within
19   14 days of entry of the Court's judgment.
20           MS. CLOUGH:  Yes, sir.  Thank you.
21           THE COURT:  She may step aside.
22        (Proceedings concluded at 5:16 PM.)
23
24
25
```

<u>C E R T I F I C A T E</u>

I, LORI RUSSELL, RMR, CRR, United States District Court Reporter for the Middle District of North Carolina, DO HEREBY CERTIFY:

That the foregoing is a true and correct transcript of the proceedings had in the within-entitled action; that I reported the same in stenotype to the best of my ability and thereafter reduced same to typewriting through the use of Computer-Aided Transcription.

*/s/ Lori Russell*

Lori Russell, RMR, CRR
Official Court Reporter

Date: 4/10/14